## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

RANDY DALE PARSON,                    )
                          Petitioner,   )
v.                                    )          Case No. CIV-07-994-M
                                      )
JIM KEITH, WARDEN,                    )
                                      )
                          Respondent.  )

## REPORT AND RECOMMENDATION

Petitioner, Randy Dale Parson, appearing with counsel, has filed a petition for habeas

corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court conviction on various

federal constitutional grounds.  It is recommended that his petition be denied.

### I.      Background and Case History

On September 29, 2003, Ashley Bethel was at a Conoco store in Ponca City,

Oklahoma, and Randy Parson offered to give her a ride to her mother's house.  Bethel

accepted the offer, but instead of taking Bethel to her mother's house, Parson drove around

with Bethel and they smoked marijuana together and drank alcohol.  The ensuing events, as

described by Bethel, led to Parson's state court conviction.

According to Bethel, at some point in their drive, Parson asked her for sex, but she

refused.  Parson then drove around with Bethel on the back roads of Tonkawa, Oklahoma.

He stopped on one of these back roads and got out of the car to get something from the trunk.

After he got back in the car, he pulled a scalpel out of his pocket and ordered Bethel to

undress.  With the scalpel pointed near her face, Bethel complied with his demand and took

off her clothes placing them in the backseat as he instructed.  Parson then pulled Bethel from

his vehicle, hit her in the face and tied her hands behind her back.  He forced her face down in the seat of his vehicle, tied her feet together and then tied her feet to her hands.  Parson then drove around for a period of time until one of the wheels of his car got stuck in a mud puddle.  He took Bethel out of his car and carried her, still tied, through some tall weeds and placed her on the ground.  He told her to be quiet and punched her in the left side of her face.  It seemed to Bethel that Parson then shoved weeds into her vagina.  When Bethel started to scream, Parson punched her five or six more times on the left side of her face, breaking her jaw.

After Parson got his wheel unstuck from the mud, he put Bethel back in his car and drove to an abandoned trailer house.  Once inside, he untied Bethel's feet from her hands and proceeded to rape her repeatedly.  He took a beer bottle and shoved the bottle into Bethel's vagina.  He removed the bottle and put his penis inside her vagina.  He then took a bottle and shoved the bottle into her anus.  He removed the bottle and forced his penis into her anus.  He put his penis in her vagina once again.  Parson then forced his penis into her mouth.

Following these assaults, Parson placed Bethel in the trunk of his car and drove to a bridge.  He removed Bethel from the trunk and tossed her over the bridge where she landed on some rocks, partly submerged in water.  He then sat on top of Bethel with his knees on her shoulders and began pushing her head under water.  Pulling her onto land, he began to choke her and slam her head on the ground.  Bethel believed he was going to kill her, and she pleaded for her life, telling him she had a young child who needed his mother.  At that point,

Parson stopped choking her and gave Bethel her clothes. He told her he was leaving to get a motel room and would be back for her.

After Parson left, Bethel heard a diesel truck drive by and hollered for help. The truck driver called for assistance, and police and paramedics arrived. Bethel was taken to a nearby hospital and treated for physical injuries and hypothermia. She was then transferred to a hospital in Wichita, Kansas, for further medical treatment, including surgery to repair her fractured jaw.

A few days later, Randy Dale Parson was identified as a suspect and arrested. In June 2005, he was convicted by a jury in the District Court of Kay County, State of Oklahoma, Case No. CF-2003-497, of First Degree Rape (Counts I, II and III), Forcible Sodomy (Count IV), Assault and Battery with Intent to Kill (Counts V), Second Degree Rape (Counts VI and VII), Kidnapping (Count X) and Aggravated Assault and Battery (Counts XI and XII).[1] He was sentenced to twenty-five years imprisonment on each of Counts I, II and III, twenty years imprisonment on each of Counts IV and V, fifteen years imprisonment on each of Counts VI and VII, ten years imprisonment on Count X and five years imprisonment on each of Counts XI and XII.

Parson appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA affirmed the conviction by opinion filed June 19, 2006. *See* Response to Petition for Writ of Habeas Corpus [Doc. #8], Exhibit 1, OCCA Summary Opinion. He filed a

---

[1]Petitioner was acquitted of a third count of Second Degree Rape (Count VIII) and Assault with a Dangerous Weapon (Count IX).

petition for rehearing which the OCCA denied on July 19, 2006.  *See* Response, Exhibit 6, OCCA Order Denying Petition for Rehearing.

Parson filed an application for post-conviction relief which was denied by the state district court on May 27, 2007.  *See* Response, Exhibit 7, Journal Entry - Application for Post-Conviction Relief.  He appealed the denial, and the OCCA affirmed the denial on July 16, 2007.  *See* Response, Exhibit 9, OCCA Order Affirming Denial of Application for Post-Conviction Relief.

On September 7, 2007, Parson petitioned this Court for federal habeas corpus relief.

## II.     Claims for Habeas Corpus Relief

Petitioner claims he is entitled to federal habeas corpus relief on the following grounds: (1) Petitioner's due process rights were violated as a result of the State's failure to produce exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (2) Petitioner was denied equal protection of the law and a fair trial because the jury was not instructed on Oklahoma's 85% Rule; (3) Petitioner's double jeopardy rights were violated because he received multiple convictions for the same offense; (4) Petitioner's due process rights were violated because the victim's in-court identification was highly suggestive and unreliable; (5) Petitioner's due process rights were violated because the evidence was insufficient to support the convictions; (6) Petitioner's Sixth Amendment rights were violated due to the ineffective assistance of trial and appellate counsel; (7) Petitioner received an excessive aggregate sentence in violation of his Eighth and Fourteenth Amendment rights; and (8) cumulative error denied Petitioner a fair trial in violation of his due process rights.

4

### III.    <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) standards of review apply to those grounds for relief raised by Petitioner that were adjudicated on the merits by the state courts. *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004); *Smallwood v. Gibson*, 191 F.3d 1257, 1264 (10th Cir.1999). Under AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

In applying the deferential AEDPA standard, the court first determines whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment. *Turrentine*, 390 F.3d at 1189. If so, the court considers whether the state court decision was contrary to or an unreasonable application of  that clearly established federal law.  *Id*.  A decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different" and "mutually opposed" to the Supreme Court decision itself.  *Id*. at 406.   A state court decision involves an

5

"unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

In conducting this inquiry, the factual findings of the state trial and appellate courts are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Short v. Sirmons*, 472 F.3d 1177, 1184 (10th Cir. 2006) (*citing* 28 U.S.C. § 2254(e)(1)).

Even if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, the analysis is not complete. Unless the error is a structural defect in the trial that defies harmless-error analysis, the court must apply the harmless-error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and *O'Neal v. McAninch*, 513 U.S. 432 (1995). *Turrentine*, 390 F.3d at 1189.

IV.   **Analysis**

A.   **Ground One – *Brady* Claim**

In his first ground for relief, Petitioner claims the State failed to produce exculpatory evidence prior to trial in violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner bases his claim on the State's failure to produce four investigative reports from the Oklahoma State Bureau of Investigation (OSBI) until the fourth day of Petitioner's trial.[2]

---

[2]The OSBI reports are attached to Petitioner's Brief in Support [Doc. #2] as Exhibits A-D.

Petitioner did not raise this claim on direct appeal of his conviction, but he did raise the claim during post-conviction proceedings. The OCCA determined the claim was procedurally barred noting that "any problems caused by the failure to disclose the reports prior to trial could have been raised in Petitioner's direct appeal." *See* Response, Exhibit 9, OCCA Order Affirming Denial of Application for Post-Conviction Relief at 2.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In finding Petitioner's *Brady* claim procedurally barred, the OCCA relied upon Okla. Stat. tit. 22, § 1086, an independent and adequate state procedural rule. *See Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002). Therefore, to overcome the procedural bar, Petitioner must demonstrate both cause for the default and actual prejudice as a result of the alleged violation of federal law.[3]

As cause, Petitioner alleges in Ground Six of the Petition that appellate counsel was ineffective for failing to raise the *Brady* claim on direct appeal. In post-conviction

---

[3]As stated, a procedural bar also may be overcome if failure to consider the claim will result in a fundamental miscarriage of justice. This exception, however, requires a petitioner to supplement his constitutional claim with a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (citation omitted). Petitioner does not invoke this exception.

proceedings, the OCCA addressed, as cause to excuse the procedural default, a claim of ineffective assistance of appellate counsel. *See* Response, Exhibit 9, OCCA Order Affirming Denial of Post-Conviction Relief at 3 ("Perhaps appellate counsel should have discovered that the reports were not disclosed prior to trial, and a claim of ineffective assistance of appellate counsel can be raised and addressed in post-conviction proceedings."). Citing *Strickland v. Washington*, 466 U.S. 668 (1984), the OCCA concluded, however, that Petitioner did not establish that the outcome of his trial and appeal "would have or should have been different" based on the State's failure to disclose the reports prior to trial. *Id.* at 3. On habeas review, this Court must give deference to the OCCA's determination that appellate counsel was not ineffective for failing to raise this claim. *See* 28 U.S.C. § 2254(d)(1). Thus, Petitioner must demonstrate that the OCCA's determination of this issue was contrary to or an unreasonable application of *Strickland*.

To determine whether appellate counsel was ineffective, this Court must look to the merits of Petitioner's *Brady* claim. *See Snow v. Sirmons*, 474 F.3d 693, 717 (10th Cir. 2007) (addressing merits of *Brady* claim where petitioner reasserted claim as part of ineffective assistance of appellate counsel raised "in an attempt to clear any procedural bar that may exist by [petitioner's] failure to raise the[] claim[] on appeal."). Because as shown below, Petitioner's *Brady* claim lacks merit, Petitioner's appellate counsel did not render constitutionally ineffective assistance by failing to raise the claim on direct appeal. The OCCA's determination of the ineffective assistance of appellate counsel claim is not contrary

to or an unreasonable application of *Strickland*.  And, Petitioner is unable to demonstrate either cause or prejudice necessary to overcome procedural default of his claim.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "In order to establish a Brady violation, a habeas petitioner must show that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Banks v. Reynolds*, 54 F.3d 1508, 1516 (10th Cir.1995).

Petitioner claims the State did not disclose until the fourth day of trial four OSBI reports, each prepared by Agent Thornton.[4]  Three of the reports are addressed collectively because defense counsel referred to these reports at trial.  The fourth report was not specifically referenced by counsel at trial and, therefore, is addressed separately.

The first report describes a third interview of the victim, Ashley Bethel.  The interview was conducted after DNA testing demonstrated Bethel had sexual relations with

---

[4]Tenth Circuit precedent generally holds that no *Brady* violation occurs if evidence is disclosed during the trial, as the materiality component is lacking.  *See, e.g. United States v. Scarborough*, 128 F.3d 1373, 1376 (10th Cir. 1997) (no *Brady* violation where evidence was disclosed to defendant towards the end of trial; "[a]s long as ultimate disclosure is made before it is too late for the defendant[] to make use of any benefits of the evidence, Due Process is satisfied.") (citations and internal quotations omitted); *see also United States v. Rogers*, 960 F.2d 1501, 1511 (10th Cir. 1992) (no *Brady* violation found where documents were disclosed to defendant on the last day of trial).  Because the four investigative reports were disclosed during Petitioner's trial, the merits of Petitioner's *Brady* claim could be determined based on the timing of the disclosure alone.  However, the Court has analyzed other aspects of the materiality component and found it to be lacking on additional grounds as well.

two other men in near temporal proximity to the sexual attack on September 29, 2003. Bethel had previously told Agent Thornton that on the night before the crime, September 28, she had sexual intercourse with her boyfriend, Nicholas Hinds.  During the third interview, Bethel told Agent Thornton that on the morning of September 29, she had sexual intercourse with another man, Calvin Dunn, whom she had known for several months.

The second report describes Agent Thornton's interview of Calvin Dunn.  Consistent with the information Bethel provided to Agent Thornton during her third interview, Dunn told Agent Thornton that he had sexual intercourse with Bethel on the morning of September 29, 2003.

The third report is an interview of Nicholas Hinds, Bethel's boyfriend.  Again, consistent with the information provided by Bethel, Hinds told Agent Thornton that on the evening of September 28, 2003, he had sexual intercourse with Bethel.

"The standard for determining *Brady* materiality is well-established. The touchstone of materiality is a reasonable probability of a different result, which exists when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007) (Supreme Court citations and internal quotations omitted).  Petitioner has failed to establish a reasonable probability of a different result had these reports been produced prior to trial.

On the first day of trial testimony, Bethel testified on direct examination that in September 2003 she was living with her boyfriend Nick Hinds but had been also having a sexual relationship with Calvin Dunn.  Tr. Vol. 2 at 5-6.  She testified that on September 28,

10

2003, she had sex with both of these men and that the men did not know about one another. Tr. Vol. 2 at 7.   On cross-examination, defense counsel asked Bethel about these relationships and Bethel admitted Hinds probably would have been very upset with her if he had known about Dunn.  Tr. Vol. 2 at 55.

Also on the first day of trial testimony, Agent Thornton testified for the limited purpose of establishing chain of custody and stated that he took buccal swabs for DNA testing from both Hinds and Dunn.  Tr. Vol. 2 at 173-174.  On the following trial day, OSBI criminalist April Marcangeli testified that she conducted DNA testing from an area of the victim's underwear that she was wearing on the day of the attack.  She testified a major component of sperm fraction from the underwear matched Dunn's DNA and that she could not exclude Hinds' DNA as matching a minor component of the sperm fraction.  Tr. Vol. 3 at 130-131.  Marcangeli further testified that she was able to exclude Petitioner's DNA as matching the sperm fraction.  Tr. Vol. 3 at 135.  In other words, no evidence of Petitioner's DNA profile was found.  Thereafter, Agent Thornton was called back as a witness for the State and described his investigation of the case in further detail.  Tr. Vol. 3 at 181 *et seq*.

On the morning of the fourth day of trial, defense counsel received a copy of Agent Thornton's interviews of Bethel, Dunn and Hinds.  Defense counsel made the following announcement to the trial court:

> [DEFENSE COUNSEL]:  Your Honor, this morning, [the prosecutor] had called me and said that an interview that took place in, I believe, March of 2004 between Mr. Thornton and the alleged victim, Ashley Bethel, Calvin Dunn and Nicholas Hinds, the report had not been given to me.  She has since provided it to me, which I have read this morning.  I've discussed this with my

client.  At this time, due to the contents of the report, we are not going to request a continuance, and I have talked to Mr. Parson about that and you agree with that; correct?

[PETITIONER]:  Yes, sir.

Tr. Vol. 4 at 4.

Petitioner's trial counsel then proceeded to cross-examine Agent Thornton using the information contained in the interviews.  Trial counsel established that it was not until Agent Thornton approached Bethel in March 2004 and told her there were two DNA samples that could not be matched that Bethel told him about having sexual intercourse with Hinds and Dunn. Tr. Vol. 4 at 26.  By questions posed to Agent Thornton, Petitioner's trial counsel also impeached Bethel's trial testimony that she had sexual intercourse with Dunn on September 28, instead of on September 29, 2003.  Tr. Vol. 4 at 26-29.

In addition, as Respondent notes, the lab report which disclosed that DNA of Hinds and Dunn were found in Bethel's vagina and underwear was filed five months before trial, on January 25, 2005, along with a notice of the State's intent to use the report.  *See* Original Record [Doc. #12], at 37-41.  Also, defense counsel filed a pre-trial motion to introduce the DNA evidence and listed both Hinds and Dunn as witnesses on Petitioner's witness list.  *Id.* at 109-112.  Furthermore, the DNA evidence was introduced at trial.  Tr. Vol. 3 at 127-131.

The jury, therefore, was made aware of the information contained in the interview reports through the testimony of witnesses.  Further, Petitioner's trial counsel was able to use those reports to challenge Bethel's credibility.  The record consequently fails to establish a reasonable probability of a different result had the OSBI interview reports been disclosed

12

prior to trial. Because Petitioner cannot establish the materiality component of a *Brady* claim, the claim lacks merit. Appellate counsel was not ineffective for failing to raise this claim on direct appeal, and the OCCA's determination of the issue is not contrary to or an unreasonable application of *Strickland.*

In addition to the three OSBI interview reports discussed above, Petitioner bases his *Brady* claim on a fourth investigative report not produced by the State prior to trial. The report states that Agent Thornton was contacted by an attorney, Jim Emig. Mr. Emig told Agent Thornton that he had been told that Bethel had told an individual by the name of Misty Carter that Bethel's boyfriend was the person who had beat her up underneath the bridge after he found out she had been having sex with someone. *See* Brief in Support of Petition, Exhibit D. The report further states that Agent Thornton attempted but was unable to locate an individual by the name of Misty Carter. The report notes that Agent Thornton re-contacted Emig and asked if he had any additional information that would help locate such a person, but Emig told him that he had no further information and that "it had probably been a baseless rumor." *Id.* This OSBI report, like the others, was given to Petitioner's counsel on the fourth day of trial prior to the conclusion of the State's case and during the testimony of Agent Thornton. *Id.*, Exhibit E (Affidavit of Petitioner's defense counsel, Todd Burlie).

The information reported to Agent Thornton by Emig is speculative and constitutes inadmissible hearsay. Petitioner fails to provide any substantiation of the rumor contained in the report. Petitioner does not argue that the individual referenced in the report likely could have been located and does not provide any corroborating evidence that the victim

13

made the alleged statement.[5]  Indeed, defense counsel had an opportunity to review the report

prior to the conclusion of the State's case in chief, and after consultation with Petitioner he

did not ask for a continuance.  For these reasons, Petitioner has not established a reasonable

probability of a different result had the investigative report been produced earlier.  The

unsubstantiated rumor in the report is not the kind of information that undermines confidence

in the trial result.  The materiality component of a *Brady* claim is lacking based on both the

timing of the disclosure and the speculative and uncertain nature of the information, and

therefore appellate counsel was not ineffective for failing to raise this claim on direct appeal.

The OCCA's determination of the issue did not result in a decision that is contrary to or an

unreasonable application of *Strickland.*

Ground One of the Petition, therefore, is procedurally barred and provides no basis

for federal habeas relief.

---

[5]The record contains reference to a friend of Bethel's named Misty McLaughlin.  Bethel testified at trial that at the time of the crime, she lived with her boyfriend, Nick Hinds, and two roommates, Misty and Michael McLaughlin.  Tr. Vol. 2 at 5-6.  In addition, a hospital record attached to the Petition in Error filed in Petitioner's state post-conviction proceedings indicates that during Bethel's hospitalization after the attack, Nick Hinds and "couple Michael & Misty" visited her.  *See* Response, Exhibit 8, Brief in Support of Petition in Error, Post-Conviction Appeal, attached Exhibit F, Wesley Medical Center progress notes.  In this habeas action, Petitioner has made no claim that the Misty Carter referenced in Agent Thornton's report could be the same person as Bethel's roommate, Misty McLaughlin.  In fact, neither Petitioner nor Respondent makes any effort to point out this evidence to the Court or argue its significance, if any.

### B.      Ground Two – Equal Protection Claim

Petitioner next claims his equal protection rights were violated because he did not receive the benefit of the OCCA's ruling in *Anderson v. State*, 130 P.3d 273 (Okla Crim. App. 2006) regarding Oklahoma's 85% Rule as did similarly situated inmates.[6]  Respondent contends this claim is procedurally barred.

In *Anderson v. State*, the OCCA reconsidered the issue of instructing jurors on parole eligibility and held, in a published decision, that jurors should be instructed on the statutory limitations on parole eligibility under Okla. Stat. tit. 21, §§ 12.1 and 13.1.  The OCCA specified the holding would have only prospective application.  *Id*. at 283 ("A trial court's failure to instruct on the 85% Rule in cases before this decision will not be grounds for reversal.").  The OCCA issued the *Anderson* decision on February 22, 2006, during the pendency of Petitioner's direct appeal.  The OCCA has held, in at least two unpublished opinions, that the *Anderson* holding applies to cases that remained pending on appeal at the time the *Anderson* decision was issued.  *See* Brief in Support, Exhibit F, OCCA Summary Opinion at 3-4, *Locust v. State of Oklahoma*, Case No. F-2009-997, April 3, 2006, and Exhibit G, OCCA Summary Opinion at 5, *Moore v. State of Oklahoma*, Case No. F-2005-1031, November 8, 2006.

---

[6]*See* Okla. Stat. tit. 21, §§ 12.1 and 13.1 (Supp. 2000).  Section 12.1 states: "A person committing a felony offense listed in [Section 13.1] on or after March 1, 2000, and convicted of the offense shall serve not less than eighty-five percent (85%) of the sentence of imprisonment imposed within the Department of Corrections."  Okla. Stat. tit. 21, § 12.1 (Supp. 2000).

Petitioner filed his direct appeal brief on December 23, 2005, before the *Anderson* decision issued. *See* Response, Exhibit 2, Brief of Appellant. He did not raise any issue regarding the 85% Rule. As previously noted, the OCCA affirmed Petitioner's conviction by Summary Opinion filed June 19, 2006, after the *Anderson* decision issued. *See* Response, Exhibit 1, OCCA Summary Opinion. Petitioner, through his direct appeal counsel, then filed a Petition for Rehearing on July 3, 2006, and for the first time raised a claim based on the 85% Rule, relying upon the *Anderson* decision. *See* Response, Exhibit 5, Petition for Rehearing. He requested a modification of his sentence based on the trial court's failure to instruct on the 85% Rule. *Id.*

The OCCA denied Petitioner's Petition for Rehearing. *See* Response, Exhibit 6, OCCA Order Denying Petition for Rehearing. The OCCA determined the Petition for Rehearing failed to meet the criteria set forth in Rule 3.14, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2006). Subdivision 2 of Rule 3.14 provides as grounds for granting a rehearing: "[t]hat the decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument." *See id.* The OCCA noted that "[Petitioner] failed to raise this claim before his direct appeal was decided, and we will not consider it." *See* OCCA Order Denying Petition for Rehearing at 2, n.4. As the record reflects, the OCCA's decision in Petitioner's direct appeal was not "in conflict" with *Anderson* as no claim had even been raised relating to the 85% Rule.

16

The record establishes Petitioner's direct appeal remained pending for approximately four months following the *Anderson* decision.  Pursuant to the OCCA's rules, Petitioner could have raised the *Anderson* claim during the pendency of his direct appeal by filing a supplemental brief.  *See* Rule 3.4(F)(2), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2006).[7]

Petitioner, represented by counsel in this habeas action, has not challenged the independence or adequacy of the OCCA's application of Rule 3.14 to bar review of his

---

[7]Rule 3.4(F)(2) provides:

A supplemental brief, if necessary to present new authority on issues previously raised, may be filed if granted leave of Court. Any party granted leave to file a supplemental brief shall file the brief within fifteen (15) days from the date the request to file is approved. A brief or document tendered for filing does not constitute acceptance for consideration as a proper part of the pending appeal unless the Court enters an order granting the filing of record. Except for issues of first impression, propositions of error advanced for the first time in any supplemental brief will be deemed forfeited for consideration. *See Brown v. State*, 871 P.2d 56, 68 (Okl.Cr. 1994); *Castro v. State*, 745 P.2d 394, 404 (Okl.Cr.1987). New propositions of error may be advanced in a supplemental brief only on an issue of first impression decided after an appellant's brief-in-chief is filed but before the appellant's case is decided by this Court; however, the application to file supplemental brief, with brief attached, containing the new proposition must be filed within thirty (30) days after the issue of first impression is published. Supplemental briefs containing new propositions filed after this thirty-day period will be deemed forfeited for consideration. If the application is granted, the Court may direct a response from the appellee, if required. For purposes of this Rule, an "issue of first impression" is defined as one where the result was not dictated by precedent existing at the time an appellant was convicted at trial, one which was susceptible to debate among reasonable minds, and is shown to be retroactively applicable to appellant's trial. Also for purposes of this Rule, "published" here refers to the date of the Oklahoma Bar Journal in which the opinion first appears; or the official slip opinions released by federal courts.

Rule 3.4(F)(2), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2006).

*Anderson* claim.  Thus, this Court may presume that Rule 3.14 is an independent and adequate ground for barring habeas review of his federal claims.  *See Hooks v. Ward*, 184 F.3d 1206, 1216-1217 (10th Cir. 1999) (once state pleads affirmative defense of an independent and adequate state procedural bar, the burden shifts to petitioner who must set forth specific factual allegations as to the inadequacy of the state procedure).  *See also Fleeks v. Poppell*, 97 Fed. Appx. 251, 260 (10th Cir. April 22, 2004) (unpublished op.) (finding habeas claim procedurally barred where petitioner failed to put at issue the adequacy of Oklahoma's remand procedure).

As cause to overcome the procedural default, Petitioner alleges, in Ground Six of the Petition, that appellate counsel was ineffective for failing to raise the claim on direct appeal and in post-conviction proceedings.

As Respondent correctly states, Petitioner did not raise in post-conviction proceedings a claim of ineffective assistance of appellate counsel based on counsel's failure to raise the equal protection claim under *Anderson*.  Therefore, that claim is unexhausted.  However, if Petitioner were to return to state court to raise such a claim in a second application for post-conviction relief, the claim would be procedurally barred pursuant to Okla. Stat. tit. 22, § 1086.  Therefore, this Court may apply the doctrine of anticipatory procedural bar.  *See Cummings v. Sirmons*, 506 F.3d 1211, 1223 (10th Cir. 2007) (claim that was technically unexhausted was nonetheless procedurally barred because if claim was raised for first time in a second application for post-conviction relief, Oklahoma state courts would deem the claim procedurally barred); *see also Anderson v. Sirmons*, 476 F.3d 1131, 1139 n. 7 (10th

Cir. 2007) ("Anticipatory procedural bar occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.") (internal quotation marks omitted). Moreover, to the extent Petitioner claims counsel was ineffective for failing to raise the *Anderson* claim in his application for post-conviction relief, that is an insufficient basis upon which to excuse procedural default of his claim because Petitioner has no right to counsel in state post-conviction proceedings. *Cummings*, 506 F.3d at 1223 ("[A]lthough Cummings appears to be asserting that the attorney who represented him in his state post-conviction proceedings was ineffective for failing to raise the claim, that is insufficient to establish cause and prejudice because a criminal defendant is not constitutionally entitled to representation by counsel in state post-conviction proceedings.") (citation omitted).

For these reasons, the claim raised in Ground Two of the Petition is procedurally barred. In addition, Petitioner's ineffective assistance of appellate counsel claim, premised on counsel's failure to raise the *Anderson* claim on direct appeal or in post-conviction proceedings, and raised in Ground Six of the Petition, is procedurally barred.

## C.    Ground Three – Double Jeopardy Claim

Petitioner claims the three counts of First Degree Rape (Counts I-III), Forcible Oral Sodomy (Count IV) and two counts of Second Degree Rape (Counts VI-VII) for which he was convicted should have merged into a single transaction of "sexual assault" and resulted in only one conviction. He contends the conviction on all six counts is a violation of the

Double Jeopardy Clause of the United States Constitution and also violates Okla. Stat. tit. 21, § 11A, a state law prohibition against double punishment.

Rejecting this claim on direct appeal, the OCCA found: "the crimes alleged in Counts I-IV, VI and VII were separate crimes not committed to further one single transaction, and [Petitioner's] convictions do not violate the statutory prohibition against multiple punishment; [footnote omitted] we further find that, as the crimes had different elements and were proved by different evidence [Petitioner's] convictions do not violate double jeopardy. [footnote omitted]." *See* Response, Exhibit 1, OCCA Summary Opinion at 3.

The Double Jeopardy Clause protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794 (1989). "[W][here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

Here, the offenses of First Degree Rape (Counts I-III), Forcible Oral Sodomy (Count IV) and two counts of Second Degree Rape (Counts VI-VII) clearly require different factual

elements of proof.[8]   Therefore, Petitioner's convictions for these offenses do not violate the

Double Jeopardy Clause of the Fifth Amendment.  The OCCA's determination of this issue

is neither contrary to nor an unreasonable application of clearly established federal law.

Petitioner further claims that the three counts of First Degree Rape should have

"merged" into a single offense as should have the two counts of Second Degree Rape.

---

[8]First Degree Rape requires proof of the following elements:

First, sexual intercourse;
Second, with a person who was not the spouse of the defendant;
Third, where force/violence was used against the victim / where force/violence was threatened against the victim and the defendant had the apparent power to carry out the threat of force/violence.

See OUJI-CR 4-120; see also Original Record [Doc. #12] at 163, Instruction No. 10; Okla. Stat. tit. 21, § 1114(A)(3).

Forcible Oral Sodomy requires proof of the following elements:

First, penetration;
Second, of the mouth of the victim;
Third, by the penis of the defendant;
Fourth, by threats of force/violence accompanied by the power of execution.

See OUJI-CR 4-128; see also Original Record at 165, Instruction No. 12; Okla. Stat. tit. 21, § 888.

Finally, Second Degree Rape requires proof of the following elements:

First, penetration of the anus/vagina;
Second, of any other person;
Third, by an inanimate object;
Fourth, without her consent;
Fifth, where force of violence is used or threatened, accompanied by apparent power of execution.

See OUJI-CR 4-127; see also Original Record at 168, Instruction No. 16; Okla. Stat. tit. 21, § 1114(B).

21

Petitioner claims the entire sexual assault lasted no more than twenty minutes and, as such, should have constituted a single criminal transaction.

The victim testified at trial that Petitioner penetrated her vagina with a bottle, then penetrated her vagina with his penis, then penetrated her anus with a bottle, then penetrated her anus with his penis, then penetrated her vagina with his penis, then penetrated her mouth with his penis.  Tr. Vol. 2 at 32-36.  The OCCA determined these were separate crimes, not committed to further one single transaction.  *See* OCCA Summary Opinion at 3.

 In support of his claim, Petitioner relies upon *Crawford v. State*, 688 P.2d 347 (Okla. Crim. App. 1984).  However, the *Crawford* case is distinguishable, and more recent case law relied upon by the OCCA demonstrates that each act constitutes a separate offense under Oklahoma law.

In *Crawford*, the defendant was charged with a single count of first degree rape.  At trial, however, the prosecution introduced evidence that the defendant committed two separate acts of rape upon the victim.  The court held that under these circumstances, the prosecution must make an election.  *Id.* at 348-349.  The court found there was no evidence at trial as to the exact period of time between the two rapes "although the inference [was] the period was not great."  *Id.* at 349.  The court, therefore, refused to find error based on the prosecution's failure to make an election and concluded that the evidence was insufficient to establish two separate offenses.  *Id.*

Conversely, in this case, Petitioner was charged from the outset with multiple offenses.  Therefore, the prosecution was not required to make an election.  And, as an

22

abundance of Oklahoma case law subsequent to *Crawford* establishes, the OCCA has "often held that one sexual act equals one separate offense, and a defendant may be convicted of several offenses occurring close together in time without violating double jeopardy." *See* OCCA Summary Opinion at 3 footnote 6 (*citing Riley v. State*, 947 P.2d 530, 533 (Okla. Crim. App. 1997); *Doyle v. State*, 785 P.2d 317, 324 (Okla. Crim. App. 1989); *Salyer v. State*, 761 P.2d 890, 893 (Okla. Crim. App. 1988); *Peninger v. State*, 721 P.2d 1338, 1341 (Okla. Crim. App. 1986)).[9]

Petitioner's Fifth Amendment double jeopardy claim is without merit and should be denied. Petitioner has not been prescribed greater punishment than the Oklahoma legislature intended, and he has not received multiple punishments for the same offense.

---

[9]For example, in *Doyle*, the OCCA rejected Petitioner's double jeopardy challenge to multiple acts of rape occurring within a limited time span relying on precedent which held that "a defendant could be convicted of two separate offenses of rape where every element of rape was proven as to each count, even though the violations occurred within minutes of one another." *Doyle*, 785 P.2d at 324. As the OCCA reasoned: "[i]t would be utterly unreasonable to hold that an accused could repeatedly rape or sodomize a victim until he felt that he had completed the act to his own satisfaction." *Id*.

Petitioner further contends his convictions violate Oklahoma's statutory prohibition against double punishment. *See* Okla. Stat. tit. 21, § 11.[10] As set forth above, this claim was rejected by the OCCA.

Under Oklahoma law, a section 11 analysis is "a separate matter, not involving double jeopardy issues." *Davis v. State*, 993 P.2d 124, 125 (Okla. Crim. App. 1999). As this issue involves purely a matter of state law, it does not serve as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). *See also El Mansouri v. Jones*, 235 Fed. Appx. 713, 717 (10th Cir. May 24, 2007) (unpublished op.) (habeas petitioner's claim that convictions violated Oklahoma's statutory prohibition against double punishment involved purely matters of state law and could not serve as grounds for federal habeas corpus relief); *Howell v. Kaiser*, 36 Fed. Appx. 925, 927, 2002 WL 89930 at *2 (10th Cir. Jan. 24, 2002) (unpublished op.) ("As to Mr. Howell's claim that his conviction for both possessing and pointing a firearm after former conviction of felony violates Oklahoma law against

---

[10]Section 11 provides in pertinent part:

> [A]n act or omission which is made punishable in different ways by different provisions of this title may be punished under any of such provisions, . . . but in no case can a criminal act or omission be punished under more than one section of law; and an acquittal or conviction and sentence under one section of law, bars the prosecution for the same act or omission under any other section of law.

Okla. Stat. tit. 21, § 11 (2001).

double punishment, we agree with the magistrate judge and the district court that this issue is a matter of state law which is not cognizable in a federal habeas action.") (*citing Estelle v. McGuire*, 502 U.S. at 67-68). Petitioner's section 11 claim is not cognizable in this federal habeas action.[11]

### D.    <u>Ground Four – In-Court Identification</u>

In Ground Four of the Petition, Petitioner challenges Bethel's in-court identification of him as a violation of his due process rights. Petitioner claims the in-court identification was unduly suggestive because Bethel identified Petitioner as her attacker for the first time at trial – nearly three years after the incident, *see* Tr. Vol. 2 at 54, and "with only [Petitioner] and his defense counsel to choose from."[12] Petitioner contends the identification was "akin to a one-person line-up." *See* Brief in Support at 36.

Petitioner further claims the identification was not reliable. Petitioner points to the fact that the description of the attacker Bethel provided to both the police and to the doctor who treated her following the assault did not match Petitioner's appearance. Specifically,

------

[11]Moreover, the OCCA's determination that Petitioner's remaining convictions do not violate section 11 is binding on this Court in resolving Petitioner's double jeopardy claims. *See Cummings v. Evans*, 161 F.3d 610, 615 (10th Cir. 1998) (in determining whether the state legislature intended to prohibit multiple punishments for a single criminal incident, federal courts are "bound by a state court's determination of the legislature's intent."). Therefore, to the extent this state-law claim could support a section 2254 habeas petition, the claim is without merit.

[12]The record shows that no objection was made at trial to Bethel's in-court identification of Petitioner. Tr. Vol. 2 at 54. The record does not disclose why no pretrial line-up identification of Petitioner by Bethel was attempted. However, investigators did have Petitioner's image on the surveillance video at the Conoco store and had created a forensic sketch of him. Tr. Vol. 4 at 12. Bethel testified that the man on the surveillance tape was the man who committed the attacks against her. Tr. Vol. 2 at 48.

Petitioner relies upon the fact that Bethel identified her attacker as having a full beard and a scar on his right hand – features Petitioner did not have either at the time of the attack or at trial.  Tr. Vol. 2 at 91, 95, 122; Tr. Vol. 3 at 33.  In addition, Bethel described Petitioner as being around 5' 7" to 5' 8" tall when, in fact, Petitioner is nearly 6' 4" tall.  Tr. Vol. 2 at 91, 122.  *See also* Brief in Support, Exhibit 8, Oklahoma Department of Corrections Offender Lookup - Detail.[13]

Due to the potential for eyewitness testimony to be unreliable, a criminal defendant has a due process right not to be subjected to suggestive identification procedures that create "a very substantial likelihood of irreparable misidentification."  *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).  A defendant's due process rights are not violated so long as the identification possesses sufficient aspects of reliability.  *Manson*, 432 U.S. at 98 (reliability is the "linchpin in determining the admissibility of identification testimony").  To determine reliability, the identification procedure must be examined in light of the "totality of the circumstances."  *Neil v. Biggers*, 409 U.S. 188, 196 (1972).  These circumstances may include the witness' opportunity "to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level

---

[13]Bethel's description of her attacker was not wholly inconsistent with Petitioner's appearance at the time of the crime.  Bethel described Petitioner as a tall man with dirty-blonde hair in a pony tail, a baseball cap, faded blue jeans and a flannel shirt.  Tr. Vol. 2 at 13.  She also described her attacker as having red freckles.  Tr. Vol. 3 at 33.  Consistent with this description, Lugene Bellin, a State's witness, testified that he saw Petitioner with a woman on the day of the crime, September 29, 2003.  Bellin had known Petitioner for nearly four years at that time.  Tr. Vol. 2 at 148.  Bellin testified that Petitioner had long hair, pulled back in a pony tail.  Tr. Vol. 2 at 153.  He also testified that Petitioner was wearing blue jeans and a long-sleeved shirt.  *Id*.  Bellin identified Petitioner at trial.  Tr. Vol. 2 at 154.

of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*.

The Supreme Court has applied the standards set forth in *Manson* and *Biggers* where a witness has made a pretrial identification and either testified at trial about the prior identification or offered an in-court identification that may have been tainted by the earlier suggestive procedures. However, this Court is not aware, nor have the parties cited, any Supreme Court case that has applied these standards in circumstances where no prior identification was made but rather, the challenge is to a first-time in-court identification. *See, e.g., Kennaugh v. Miller*, 289 F.3d 36, 44 (2d Cir. 2002) ("[T]he Supreme Court . . . has never applied either the standard in *Manson* or the specific *Biggers* test in a context like the one before us, where the only identification occurred in open court.").

The OCCA declined to apply the *Manson* and *Biggers* standards when it rejected this claim on Petitioner's direct appeal. The OCCA expressly noted that "the cases cited by the parties, discussing factors to consider when an in-court identification is preceded by a suggestive pre-trial identification, do not apply." *See* OCCA Summary Opinion at 2, footnote 2.[14] The OCCA nonetheless concluded that the in-court identification was reliable:

> We find in Proposition I that the victim's in-court identification of Parson was reliable; as the victim neither saw nor identified Parson in any setting between the commission of the crimes and the trial, there was no opportunity for an

---

[14]The briefs submitted by the parties on direct appeal of Petitioner's conviction cite the United States Supreme Court's decisions in *Manson* and *Biggers*. *See* Response, Exhibits 2 and 3. It is to this Supreme Court precedent the OCCA, therefore, appears to refer.

intervening suggestive pre-trial identification, and her in-court identification was not tainted.

*See* OCCA Summary Opinion at 2.

Respondent contends that "there is no clearly established Supreme Court precedent that requires a state court to make a reliability determination before admitting an in-court identification, where there has been no attempt at pre-trial identification." *See* Response at 18.[15]   Respondent contends, therefore, that the OCCA's determination is not "contrary to or an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). *Compare Cummings v. Sirmons*, 506 F.3d at 1237 (rejecting habeas petitioner's claim where petitioner failed to identify any Supreme Court decisions establishing a constitutional requirement that the testimony of an accomplice-witness be corroborated).   In his Reply, Petitioner does not address this ground for relief and, therefore, has not challenged Respondent's contention that relief on this claim should be denied pursuant to 28 U.S.C. § 2254(d)(1).

Respondent is correct that the OCCA's determination is not contrary to clearly established federal law.  *See Kennaugh*, 289 F.3d at 44 (state court's decision was not contrary to clearly established federal law because the Supreme Court had not applied *Manson* or *Biggers* standards in a context where the only identification occurred in open court). *Compare Carter v. Ward*, 347 F.3d 860, 863-864 (10th Cir. 2003) (where Supreme

---

[15]Respondent casts Petitioner's claim in a slightly different manner than that raised by Petitioner.  Petitioner is not challenging any failure by the state court to make a reliability determination; rather, Petitioner is challenging the fundamental fairness of the admissibility of that testimony.

Court had not yet ruled on whether pre-*Miranda* or prearrest silence was protected by the Fifth Amendment and had expressly reserved ruling on that issue, state court decision rejecting a claim turning on that issue could not be contrary to clearly established Supreme Court precedent); *see also Anderson v. Mullin*, 327 F.3d 1148, 1155 (10th Cir. 2003) ("'If no Supreme Court precedent is *dispositive* of a petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be 'contrary.''") (*quoting Vieux v. Pepe*, 184 F.3d 59, 63 (1st Cir. 1999) (emphasis in original)).

The OCCA's decision and, in particular, the OCCA's refusal to apply the *Biggers* factors may, nonetheless, be an unreasonable application of clearly established federal law. *See Valdez v. Ward*, 219 F.3d 1222, 1229-1230 (10th Cir. 2000) (unreasonable application clause of § 2254(d)(1) applies where the state court "unreasonably refuses to extend [a legal principle from Supreme Court precedent] to a new context where it should apply" (*quoting Williams v. Taylor*, 529 U.S. at 406). *See also Carey v. Musladin*, 127 S.Ct. 649, 656 (2006) ("AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.") (Kennedy, J., concurring); *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004) (acknowledging that "the difference between applying a rule and extending it is not always clear," but noting that "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.").[16]

_____

[16]Several Circuit Courts of Appeals have applied the *Biggers* factors in circumstances similar to those presented here where the challenge is to an in-court identification that does not follow an
(continued...)

The Court, however, need not decide whether the OCCA's determination of the issue is an unreasonable application of clearly established federal law because any error with respect to permitting Bethel's in-court identification of Petitioner constitutes harmless error. *See Kennaugh*, 289 F.3d at 48 (not deciding whether state court unreasonably applied clearly established federal law based on finding that any error by the state court "in failing to test directly the reliability of [the witness' identification] testimony was harmless").

The standard governing harmless error analysis is governed by *Brecht v. Abrahamson*, 507 U.S. at 623. *See Fry v. Pliler*, 127 S.Ct. 2321, 2328 (2007); *Turrentine v. Mullin*, 390 F.3d at 1189. Under *Brecht*, habeas relief is not proper unless the error had a

---

[16](...continued)

earlier pre-trial identification by the witness. *See United States v. Rogers*, 126 F.3d 655, 658 (5th Cir.1997) (applying *Biggers* factors where witness made first-time identification of defendant as perpetrator after recognizing him during the course of giving her testimony at trial); *United States v. Murray*, 65 F.3d 1161, 1168-69 & n. 6 (4th Cir.1995) ("Based on the totality of the circumstances, we agree that although the Government allowed the witnesses to see [defendant] seated at the defense table prior to their testimony, it did not create a substantial likelihood of irreparable misidentification . . . . [Defendant] presents no evidence of a likelihood of misidentification other than the fact that both witnesses saw him seated at the defense table prior to testifying."); *United States v. Hill*, 967 F.2d 226, 230-32 (6th Cir. 1992) ("We hold that the *Biggers* analysis applies to such [initial] in-court identifications for the same reasons that the analysis applies to impermissibly suggestive pretrial identifications."); *United States v. Rundell*, 858 F.2d 425 (8th Cir.1988) (applying *Neil v. Biggers* factors to initial in-court identifications); *Code v. Montgomery*, 725 F.2d 1316, 1319-20 (11th Cir.1984) (applying *Neil v. Biggers* factors to in-court identification where there was no pretrial identification; while it "is unfortunate that no pretrial identification procedures were undertaken, . . . failure to hold a pretrial lineup does not violate due process.")). The Tenth Circuit has also indicated in an unpublished decision that the *Biggers* "totality of the circumstances" analysis applies to determine the reliability of a first-time in-court identification. *See United States v. Hawkins*, Nos. 96-2176, 97-2168, 1998 WL 864593 at *3 (10th Cir. Dec. 11, 1998) (unpublished op.) ("[O]ur analysis as to impermissible suggestiveness of an in-court identification is identical, whether it concerns a witness who had a pretrial opportunity to identify defendant, or a witness who identifies the defendant for the first time at trial."). The weight of circuit authority supports a finding that the OCCA's refusal to apply *Biggers* is an unreasonable application of clearly established federal law.

"substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 623.

The weaknesses surrounding Bethel's identification testimony were presented to the jury through defense counsel's cross-examination of Bethel and other witnesses.  Tr. Vol. 2 at 91 (Bethel); Vol 2 at 122 (Deputy Kelly); Vol 3 at 32-33 (Dr. Shuart).  The jury was made aware that contrary to Bethel's testimony, Petitioner did not have a scar and was taller than 5' 7".  Tr. Vol. 2 at 127.  The jury was also made aware that police had eliminated as a suspect an individual named Larry Martin who did have a scar on his left hand.  Tr. Vol. 3 at 35-37.  The reliability of Bethel's identification testimony, therefore, was properly submitted for the jury's consideration.  *See Romero v. Tansy*, 46 F.3d 1024, 1032 (10th Cir. 1995) (in-court identification of criminal defendant did not deny him due process; "[a]ny suggestiveness surrounding the courtroom identification was a matter to be considered by the jury in weighing the reliability of [the witness's] testimony").

Bethel also identified the man on the surveillance tape from the surveillance video at the Conoco station as the man who had attacked and sexually assaulted and raped her.  Tr. Vol. 2 at 48.  In addition, OSBI Agent Thornton identified both Bethel and Petitioner on the surveillance videos.  Tr. Vol. 3 at 202.

Moreover, as discussed in relation to Ground Five of the Petition, the evidence was sufficient to convict Petitioner of the offenses.  *See Kennaugh*, 289 F.3d at 48 (finding any error in admission of in-court identification testimony harmless where evidence of guilt was powerful and credibility and reliability of witness's in-court identification were effectively

31

challenged on cross-examination of the witness).  Based on the totality of the evidence presented to the jury, any error in allowing Bethel's in-court identification of Petitioner did not have a substantial or injurious effect or influence in determining the jury's verdict. For these reasons, Ground Four of the Petition should be denied.

### E.    Ground Five – Sufficiency of the Evidence

Petitioner claims the evidence was not sufficient to support his convictions.  Primarily Petitioner bases this claim on  alleged inconsistencies in the testimony of the victim, Bethel. In addition, Petitioner contends no physical or biological evidence showed either that Petitioner had any sexual contact with Bethel or that Bethel was ever inside Petitioner's car after she sustained the injuries caused by her attacker.

On federal habeas review of the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006) (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard respects the jury's province to weigh the evidence and draw reasonable inferences from the testimony presented at trial.  *Id.*  The evidence can be either direct or circumstantial.  *See Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998) ("In determining whether evidence is sufficient to support the convictions, we look at both direct and circumstantial evidence."). Because sufficiency of the evidence is a mixed question of law and fact, the deference required by both § 2254(d)(1) and (d)(2) is applied. *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006).  A federal habeas court must "defer

32

to any determination of factual issues by the state court due to the presumption of correctness afforded by § 2254(e)." *Id.*

Rejecting this claim on direct appeal, the OCCA found that "any rational trier of fact could have found the essential elements of each crime beyond a reasonable doubt." *See* OCCA Summary Opinion at 2 *citing Spuehler v. State*, 709 P.2d 202 (Okla. Crim. App. 1985).[17] The OCCA further found as to the sex offenses that "the victim's testimony was not inherently improbable and unworthy of belief." *Id.* at 2-3 (citations omitted).

Bethel testified that Petitioner offered to give her a ride from a Conoco convenience store on the morning of September 29, 2003. Tr. Vol. 2 at 11,14-15. Surveillance video from the convenience store shows Petitioner meeting up with Bethel at the Conoco store. Tr. Vol. 3 at 201-206. Bethel testified that the man on the surveillance tape was the person who attacked her. Tr. Vol. 2 at 48. Petitioner was positively identified as the person on the surveillance tape by OSBI Agent Thornton. Tr. Vol. 3 at 202, 204-206.[18]

Bethel testified that Petitioner drove her around for awhile and then stopped at a store in Tonkawa, Oklahoma, and purchased a Mountain Dew for her and a bottle of orange juice for himself. Tr. Vol. 2 at 16-17, 62-63. Petitioner then purchased a bottle of vodka to mix

---

[17]In *Spuehler*, the OCCA set out the test for sufficiency of the evidence based on *Jackson v. Virginia*. *See Valdez*, 219 F.3d at 1238 ( recognizing that Oklahoma case law follows the *Jackson v. Virginia* standard for reviewing sufficiency of the evidence claims).

[18]The alleged inconsistencies in Bethel's description of her attacker and the in-court identification of Petitioner have been addressed in the analysis of the claim raised in Ground Four of the Petition. As set forth in that analysis, the alleged inconsistencies were made known to the jury and thus, were subject to a credibility determination by the jury.

with the drinks.  Tr. Vol. 2 at 16-17.  A Sunny Delight bottle was found at the trailer where Bethel testified she was later raped.  Tr. Vol. 3 at 167.[19]

Bethel testified that they stopped at a Love's convenience store so that Petitioner could purchase gas.  Tr. Vol. 2 at 19-20.  Witness, Lugene Bellin, who, as indicated previously, had known Petitioner for about four years at the time of the crime, testified that he saw Petitioner with a woman at the Love's convenience store on the morning of September 29, 2003.  Tr. Vol. 2 at 148-149.[20]  Investigators found in Petitioner's car a cigarette butt with Bethel's DNA.  Tr. Vol. 3 at 119, 126-127.

Bethel testified that Petitioner took her to an abandoned trailer filled with clutter and a lot of beer bottles.  Tr. Vol. 2 at 29-30, 76-77. Bethel testified that while at the trailer, Petitioner shoved a bottle in her vagina and her anus.  Tr. Vol. 2 at 31-33, 34, 77, 79. Evidence was admitted at trial that a bottle found in the trailer had Bethel's hair on it, Bethel's blood on the mouth of the bottle and Petitioner's fingerprint on the bottle.  Tr. Vol. 3 at 161, 172-175.  Further, evidence of Bethel's injuries, including medical testimony regarding the ligature marks on her wrists and ankles and debris in her vagina, was consistent with her detailed and specific descriptions as to how the attacks occurred.

---

[19]As Respondent notes, at trial Bethel testified that she had a fountain Mountain Dew.  Tr. Vol. 2 at 16.  However, Bethel may have told OSBI Agent Thornton that she had a bottle of Mountain Dew.  Tr. Vol. 2 at 62.

[20]Bellin also testified that after he heard about Petitioner's arrest, he recalled seeing Petitioner with a young woman on the day the crime was committed and reported this fact to law enforcement.  Tr. Vol. 2 at 150-153.

Petitioner further claims the evidence was insufficient in light of the "undisclosed exculpatory evidence."  As discussed in relation to Ground One, the OSBI reports at issue were in fact disclosed prior to the end of the State's case in chief.  Defense counsel was able to use competent and reliable evidence from these reports in his examination of witnesses, and the jury, therefore, was able to make credibility determinations in light of the information disclosed.

Petitioner has failed to meet his burden of proving that no rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. The OCCA's determination of this issue is not contrary to or an unreasonable application of Supreme Court precedent nor is it an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Ground Five of the Petition should be denied.

F.     **Ground Six – Claims of Ineffective Assistance of Trial and Appellate Counsel**

In Ground Six of the Petition, Petitioner brings claims of ineffective assistance of trial and appellate counsel.  He claims trial counsel was ineffective for failing to conduct further investigation of the case in light of the State's alleged withholding of exculpatory evidence. The alleged exculpatory evidence Petitioner relies upon in support of this claim is the information contained in the fourth OSBI report disclosed to trial counsel on the fourth day of trial.  As previously addressed, this report recounted a rumor that suggested Bethel had made a statement to a third-party that her boyfriend had beaten her up under the bridge.

Respondent contends this claim is procedurally barred and that Petitioner has failed to allege cause to overcome the procedural bar.

Petitioner raised the ineffective assistance of trial counsel claim for the first time during post-conviction proceedings, and the OCCA held the claim was procedurally barred pursuant to Okla. Stat. tit. 22, § 1086. *See* Response, Exhibit 9, OCCA Order Affirming Denial of Post-Conviction Relief. The Tenth Circuit "has recognized that Oklahoma's procedural bar on ineffective assistance of counsel claims such as [Petitioner's] is a valid bar to a federal court's consideration of an ineffectiveness of counsel claim when trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone or after adequately developing a factual record through some other procedural mechanism." *Coronado v. Ward*, 517 F.3d 1212 (10th Cir. 2008) (internal quotations and citation omitted). Here, the record demonstrates that Petitioner was represented by different counsel at trial (Todd R. Burlie) and on appeal (Jarrod Stevenson). However, the ineffective assistance of trial counsel claim could not have been resolved on the trial record. Petitioner claims trial counsel should have requested a continuance and conducted further investigation with respect to the information contained in the fourth OSBI report.

Nonetheless, Respondent claims Petitioner had an adequate procedural opportunity to develop the factual record in support of the ineffective assistance of trial counsel claim through application of Rule 3.11, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2003). *See* Response at 25, n.4. Rule 3.11 provides that a defendant may supplement the record on direct appeal if he presents "clear and convincing evidence [of] a

36

strong possibility trial counsel was ineffective." Okla. Stat. tit. 22, ch. 18, Rule 3.11(B)(3)(b)(I).  The claim of ineffective assistance of trial counsel can be "predicated on either error relating to allegations arising from the record or outside the record or a combination thereof."  *Id.*, Rule 3.11(B)(3)(b).

Petitioner, represented by counsel, has not challenged the adequacy of Rule 3.11.  *See Hooks v. Ward*, 184 F.3d at 1217 (the petitioner bears the burden of placing that adequacy of the state remand procedure at issue); *see also Fleeks v. Poppell*, 97 Fed. Appx. 251, 260 (April 22, 2004) (unpublished op.) (petitioner's ineffective assistance of trial counsel claim procedurally barred even though claim could not have been resolved upon the trial record alone where Petitioner did not put at issue the adequacy of Oklahoma's remand procedure as set forth in Rule 3.11).  Therefore, Petitioner's ineffective assistance of trial counsel claim is procedurally barred.  *Compare Coronado*, 517 F.3d at 1215 (even if ineffective assistance of trial counsel claim could not have been resolved on trial record alone, habeas petitioner failed to assert that Oklahoma's remand procedure as provided in Rule 3.11 of the Rules of the Oklahoma Court of Criminal Appeals was not adequate for purposes of allowing him to supplement the direct appeal record).

Respondent maintains that Petitioner has not alleged cause to overcome the procedural bar of this claim.  Respondent is correct.  Although Petitioner brings a claim of ineffective assistance of appellate counsel, that claim is limited to appellate counsel's failure to "discover and investigate the *Brady* violation prior to [Petitioner's] State Post-Conviction action" and failure to "raise the lack of an 85% jury instruction both in direct appeal and in

post-conviction." *See* Brief In Support of Petition at 60.  Furthermore, in his Reply brief, Petitioner makes no attempt to identify cause for the procedural default of his ineffective assistance of trial counsel claim.  In fact, Petitioner does not respond in any manner to Respondent's assertion of the procedural bar defense.  Nor has Petitioner claimed a fundamental miscarriage of justice will result if the ineffective assistance of trial counsel claim is not reviewed by this Court.  *See Herrera v. Collins*, 506 U.S. at 404 (fundamental miscarriage of justice exception requires petitioner to supplement constitutional claim with colorable showing of factual innocence).  For these reasons, Petitioner's claim of ineffective assistance of trial counsel is procedurally barred.[21]

---

[21]Even if this claim were not procedurally barred, Petitioner cannot demonstrate the prejudice necessary to support such a claim.  To establish prejudice, Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Petitioner has failed to demonstrate that had counsel conducted a further investigation of the case after receiving from the prosecution the fourth OSBI report, a reasonable probability exists that the result of the proceeding would have been different.  As discussed in relation to Petitioner's *Brady* claim, Petitioner has submitted no facts to show how further investigation of the statement Bethel allegedly made to a third party, implicating Bethel's boyfriend as the perpetrator of the attack, would have created a reasonable probability of a different result.  *Compare United States v. Santurio*, No. 97-5149 (10th Cir. May 29, 1998) (unpublished op.) (petitioner could not make requisite showing of prejudice to support ineffective assistance of trial counsel claim based on counsel's failure to call K-9 handler as witness; although petitioner alleged K-9 handler could have challenged arresting officer's account of search, petitioner did not present evidence as to what K-9 officer would have said, "thus making finding of prejudice on this claim nearly impossible") *citing Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir.1986); *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir.1990) (stating that when an ineffective assistance claim centers on a failure to investigate and elicit testimony from witnesses, the petitioner must "demonstrate, with some precision, the content of the testimony they would have given at trial." (quotation omitted)).  Therefore, Petitioner's ineffective assistance of trial counsel claim is without merit and should be denied, in the alternative, on this basis.

Petitioner further claims appellate counsel was ineffective for failing to bring a failure to instruct claim based on Oklahoma's 85% Rule.  This claim has been addressed in relation to Ground Two of the Petition and is procedurally barred.  Ground Six of the Petition, therefore, should be denied.

### G.      Ground Seven – Claim of Excessive Aggregate Sentence

Petitioner concedes that the sentences he received are within the range of punishment provided for under Oklahoma law.  Yet, he claims that the aggregate sentence of 135 years[22] is disproportionate in violation of the Eighth Amendment to the United States Constitution.[23]

The OCCA rejected Petitioner's challenge to the excessiveness of his sentence, and it appears the OCCA did so based solely on principles of state law.  *See* OCCA Summary Opinion at 3-4 ("[Petitioner's] sentences are not excessive under the facts and circumstances

---

[22]Petitioner was sentenced to twenty-five years on each of Counts I, II and III, twenty years on each of Counts IV and V, fifteen years on each of counts VI and VII, ten years on Count X, and five years on each of Counts XI and XII.  Some of the sentences are consecutive and some are concurrent, resulting in an aggregate sentence of 135 years.

[23]In the Brief in Support, the heading for this ground for relief cites the Fourteenth Amendment and the Oklahoma Constitution as a basis for relief in addition to the Eighth Amendment.  *See* Brief in Support at 62.  However, the Court reviews the claim under the specific provisions of the Eighth Amendment rather than as a more generalized due process claim.  *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (where a particular constitutional amendment provides the explicit textual source of constitutional protection, that provision governs over the more generalized protections of due process).  And, Petitioner's citation to the Oklahoma constitution does not provide a basis for federal habeas corpus relief.  *See Estelle* 502 U.S. at 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

of this case.") (*citing Rea v. State*, 34 P.3d 148 (Okla. Crim. App. 2001)).[24]  Therefore, this claim is reviewed *de novo*.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003)  (citation and internal quotations omitted).  The proportionality principle, however, "reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).  *See also United States v. Gillespie*, 452 F.3d 1183, 1190-1191 (10th Cir. 2006) (summarizing Supreme Court precedent on the proportionality principle and noting that "the [Supreme] Court has only twice invalidated a sentence under the Eighth Amendment: once in 1910, when the defendant was sentenced to fifteen years in chains and hard labor for falsifying a public document; and most recently in 1983, when the defendant was sentenced to life without parole after committing six nonviolent felonies including writing a bad $100-dollar check") (citations omitted).  As the Tenth Circuit has instructed, courts "are reluctant to interfere with the legislative determination of an appropriate sentence range." *Hawkins v. Hargett*, 200 F.3d 1279, 1285 (10th Cir. 1999).  Application of the narrow proportionality principle has, therefore, been reserved to the truly extraordinary case involving a sentence grossly disproportionate to the crime of conviction.  *Hawkins v. Hargett*, 200 F.3d 1279, 1282 (10th Cir. 1999).  *See also*

---

[24]In *Rea,* the OCCA applied a "shocks the conscience" standard to determine whether a punishment was excessive.  The OCCA expressly rejected the appellant's suggestion to abandon the shocks the conscience standard in favor of a proportionality review.  *Id.*, 34 P.3d at 149.

*United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006), *cert. denied*, 127 S.Ct. 723 (2006); *United States v. Gurule*, 461 F.3d 1238, 1247 (10th Cir. 2006).

Petitioner was convicted of multiple counts of rape, forcible sodomy, assault and battery with intent to kill, and aggravated assault and battery.  In light of Supreme Court precedent on the disproportionality principle and the fact that Petitioner's sentences are within the statutory range of punishment permitted under Oklahoma law, this Court concludes that Petitioner's sentences, even in the aggregate, are not grossly disproportionate to his crimes.  *See United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006) (aggregate sentence of imprisonment of 468 months was not grossly disproportionate to the severity of the crimes under narrow proportionality principle that applies to noncapital sentences), *cert. denied*, 127 S.Ct. 684 (2006); *compare Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) (holding that a sentence of life without parole is not disproportionate to a first-time offender's conviction of possession of cocaine).  Petitioner fails to present the extraordinary case needed to establish a violation of his Eighth Amendment rights.  The claim raised in Ground Seven of the Petition, therefore, should be denied.

### H.    Ground Eight -- Cumulative Error

In his eighth and final ground for relief, Petitioner alleges that cumulative error deprived him of a fundamentally fair trial. On direct appeal, the OCCA denied Petitioner's claim of cumulative error finding no error with respect to any of the propositions raised on direct appeal and, therefore, no cumulative error.  *See* OCCA Summary Opinion at 4.

41

"Cumulative error analysis is an extension of harmless error and conducts the same inquiry as for individual error focusing on the underlying fairness of the trial." *Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003) (citations and internal quotations omitted). The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002).

Here, Petitioner has failed to establish two or more individually harmless errors and, therefore, there is no basis upon which to find cumulative error. *See, e.g., Gonzales v. Tafoya*, 515 F.3d 1097 (10th Cir. 2008) (denying petitioner's claim that he was prejudiced by the cumulative effect of his counsel's errors where court concluded counsel's performance was not constitutionally deficient and, therefore, there was no error to cumulate); *United States v. Caballero*, 277 F.3d 1235, 1249 (10th Cir. 2002) ("Cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.") (internal quotation marks omitted).[25]   Accordingly, the OCCA's cumulative error analysis is not contrary to or an unreasonable application of clearly established federal law. *See Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998) (state court's rejection of petitioner's cumulative error claim was not contrary to or an unreasonable application of federal law: there can be no cumulative error analysis, because this analysis "does not apply to the cumulative effect of non-errors.").

_____

[25]The only ground for relief upon which error can be based is, arguably, the admission of Bethel's identification testimony.  That single error is insufficient to trigger cumulative error analysis.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by May   13th  , 2008.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this   23rd   day of April, 2008.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE